AO (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA

vs.

GREGORIO HORACIO CAMPO-RODRIGUEZ,
ARLEYS FERNANDO GARCES, and
SANTOS DAVID CERROS MALDONADO

**CRIMINAL COMPLAINT**

CASE NUMBER: 8:13 MJ1572 MAP

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about August 19, 2013, the defendants, who will first enter the United States in the Middle District of Florida, did,

> conspire to possess with intent to distribute five hundred (500) grams or more of cocaine while on board a vessel subject to the jurisdiction of the United States.

in violation of Title 46, United States Code, Section(s) 70506(b). I further state that I am a(n) Special Agent with the Department of Homeland Security, Homeland Security Investigations (HSI), and that this Complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof: ☒ Yes  ☐ No

_____
Signature of Complainant
Special Agent Dana Hatton

Sworn to before me and subscribed in my presence,

August 22, 2013                     at         Tampa, Florida

MARK A. PIZZO
United States Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

## AFFIDAVIT OF SPECIAL AGENT DANA L. HATTON, HSI

Your affiant, Dana L. Hatton, being duly sworn, deposes and states the following:

1. I am a citizen of the United States, residing in Florida.

2. I am a Special Agent employed by the Department of Homeland Security, Homeland Security Investigations (HSI), formerly known as the United States Customs Service (USCS).
I have been so employed for approximately eleven (11) years and ten (10) months.

3. Based on my training and experience as a Special Agent with HSI and USCS, I have conducted investigations concerning violations of Title 21, United States Code, Sections 959 and 960, which prohibit the production, transportation, importation, distribution and possession of illegal drugs, including cocaine, and violations of Title 46 Appendix, United States Code, Section 70503 (the Maritime Drug Law Enforcement Act), which prohibits drug trafficking on the high seas, including the possession with intent to distribute cocaine on vessels subject to the jurisdiction of the United States. Through these investigations, I have become familiar with the means and methods narcotics traffickers use to transport, import and distribute illicit drugs, as well as, the support and assistance that narcotics organizations require to conduct their illegal activities.

4. Since May 1st of 2002, I have been assigned as a Special Agent to Operation Panama Express (North) Strike Force. Operation Panama Express is a federally approved Organized Crime Drug Enforcement Strike Force (OCDETF)

investigation being conducted by Homeland Security Investigations, the Drug Enforcement Administration (DEA), the Federal Bureau of Investigation (FBI), the United States Coast Guard, the Internal Revenue Service (IRS) and state and local law enforcement agencies. Investigations initiated by Operation Panama Express are prosecuted in the Middle District of Florida (Tampa Division). Special Agents assigned to Operation Panama Express currently investigate cocaine smuggling organizations that are responsible for the transportation of cocaine through international waters of the Caribbean Sea (via vessel) to transshipment locations for later introduction and distribution to the United States.

5. This affidavit is submitted in support of a criminal complaint and the issuance of arrest warrants for the following individuals:

    (A)    Gregorio Horacio CAMPO RODRIGUEZ (Colombian national)

    (B)    Arleys Fernando GARCES (Colombian national)

    (C)    Santos David CERROS MALDONADO (Honduran national)

who knowingly and willfully conspired to possess with the intent to distribute five hundred (500) grams or more of cocaine, a Schedule II controlled substance, while on board a vessel subject to the jurisdiction of the United States, with the Middle District of Florida being the place at which the above individuals first entered the United States, in violation of Title 46, United States Code, Sections 70503 and 70506, Title 18, United States Code, Section 2, and Title 21, United States Code, Section 960(b)(1)(B)(ii).

6. The information contained herein is either personally known to me or has been provided to me by other law enforcement officers with whom your Affiant has worked on this investigation. This affidavit is submitted for the limited purpose of establishing probable cause for the criminal charges set forth herein and, therefore, does not contain each and every fact known to me or other law enforcement agents concerning this investigation.

7. The United States Coast Guard (USCG) has the authority under 14 U.S.C. § 89 to make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, in order to enforce federal laws.

8. On August 19, 2013, while on routine patrol, a maritime patrol aircraft (MPA) located a suspect vessel approximately 70 nautical miles (NM) east of Nicaragua. The HMS ARGYLL (with United States Coast Guard Law Enforcement Detachment Team 102 onboard) was tasked to intercept the suspicious vessel. Approximately 38 NM southeast of Corn Island, Nicaragua, the HMS ARGYLL located the suspect vessel, identified as a 28-foot Panga-style go-fast vessel (GFV) equipped with one (1) outboard engine, dead in the water (DIW). The GFV displayed no indicia of nationality and contained three (3) crewmembers onboard. The activity of the GFV was deemed suspicious based on, among other things, the fact that the vessel was (a) in a known drug smuggling area, (b) located along a drug smuggling route and (c) displayed no indicia of nationality.

9. As air and surface assets assigned to the HMS ARGYLL arrived on scene and were counter-detected by the suspect GFV, the crewmembers began jettisoning multiple packages overboard. A helicopter assigned to the HMS ARGYLL observed the crew jettison six (6) packages overboard - one (1) of which sank and five (5) of which were recovered by one of the HMS ARGYLL's small boats. Upon inspection, the recovered packages contained a laptop computer, a GPS unit, a radio, a power inverter, paperwork/documents and one kilogram of a substance which appeared to be an illicit narcotic substance. Subsequent narcotics identification kit (NIK) testing conducted on the unknown substance yielded two (2) positive results for the presence of cocaine. Concurrently, a second small boat from the HMS ARGYLL commenced Right of Approach (ROA) questioning which resulted in conflicting accounts from the GFV crewmembers. None of crewmembers claimed to be the master of the vessel and, in fact, alleged that the master had departed earlier in the day on a different panga with a load of crabs. One of the crewmembers claimed Colombian nationality for the GFV and all three (3) crewmembers claimed Colombian nationality for themselves, but asserted they did not possess any identification documents. However, a passport recovered from one of the jettisoned packages identified one crewmember as a Honduran citizen. Additionally, the crewmembers claimed they did not know their next port of call and that they were fishing for crab, however, Coast Guard personnel noted the fishing gear onboard was new and unused. In my experience, the aforementioned stateless

4

panga-style GFV fits the profile of a smuggling vessel commonly utilized in littoral (coastal) drug smuggling routes, as well as, those being utilized as onload/offload vessels to/from larger go-fast vessels and mother ships. These smaller GFVs are perceived by drug trafficking organizations (DTOs) to appear as legitimate vessels engaged in fishing/crabbing activities, thereby deflecting suspicion by law enforcement authorities.

10. Based upon the conflicting stories provided by the crew, as well as, the crew jettisoning suspicious packages overboard; the boarding team (BT) recommended a boarding of the GFV to be conducted. United States Coast Guard (USCG) District Seven concurred and submitted a request to the government of Colombia to confirm/deny registry of the GFV. The government of Colombia was ultimately unable to confirm or deny registration of the suspect GFV, whereupon, USCG District Seven subsequently assimilated the GFV to a vessel without nationality and granted permission to conduct a Law Enforcement Boarding.

11. Pursuant to the arrival of a Nicaraguan Naval asset on scene, the GFV crewmembers became compliant and requested to be taken under control by the United States claiming they feared being killed if they were turned over to the Nicaraguan authorities. The crewmembers subsequently provided the boarding team with identification documents. The three (3) crewmembers were identified as: Gregorio Horacio CAMPO RODRIGUEZ, Arleys Fernando GARCES and Santos David CERROS MALDONADO.

12. The boarding team subsequently completed the boarding with 100% At Sea Space Accountability (ASSA) (to include a minimally intrusive search of two unaccountable spaces) with negative results. Ion scan testing performed by the boarding team also yielded negative results. In my experience, it is known that crewmembers typically douse/scrub vessels utilized in narcotics trafficking with fuel and/or bleach in an effort to eliminate evidence (drug residue) and foil ion scan readings.

13. In summary, the aforementioned stateless panga-style GFV fits the profile of a littoral/coastal smuggling vessel capable of operating under the auspices of fishing/crabbing activities in an effort to avoid law enforcement detection, and therefore, is considered a favorable vehicle for narcotics smuggling operations. In addition, the suspicious behavior exhibited by the crewmembers prior to and immediately after apprehension (the jettisoning of suspicious packages overboard, providing conflicting answers during ROA questioning, providing false statements to Coast Guard personnel and claiming retaliatory [death] actions if detained by Nicaraguan authorities), is probable cause to believe that the three (3) defendants knowingly and willfully conspired with each other and other persons to possess with intent to distribute five hundred (500) grams or more of cocaine, while on board a vessel subject to the jurisdiction of the United States, in violation of Title 46, United States Code, Sections 70503 and 70506 and Title 21, United States Code, Section 960(b)(1)(B)(ii), as described herein.

Affiant declares under penalty of perjury that the foregoing is true and correct.

_____
Dana Hatton
Special Agent
Homeland Security investigations

Sworn to and subscribed before me
this __22__ day of August, 2013.

_____
MARK A. PIZZO
United States Magistrate Judge

7